We're here for argument in case number 18-11630, Alan Eugene Miller v. Commissioner of the Alabama Department of Corrections. Mr. Nepi, you've reserved 20 minutes for rebuttal, I presume? Ten minutes. Ten minutes. Flipped around here. Okay. We're ready to go whenever you are. May it please the Court and good afternoon. Alan Miller's death sentence violates the Sixth Amendment as articulated by the Supreme Court in Ring v. Arizona. According to Ring, capital defendants have a Sixth Amendment right to a jury determination of any fact on which the legislature conditions an increase in their maximum sentence. Miller was convicted of the provision of the Alabama Criminal Code of killing two or more persons by one act or pursuant to one scheme. Significantly, at the time of the offense, this element of the code was not an aggravating factor. That makes this case unique from other cases where an element of the crime, such as under a sentence of imprisonment or during a robbery, are also aggravating circumstances. Except, in this case, the jury did make a finding of the aggravating circumstance that the court ultimately based the death penalty on, did it not? The argument, the argument is that it was implicitly found. There was no explicit finding. Well, we have to assume that the jury followed instructions, right? That's the law. Right. Okay. And the jury could not return a recommendation of the death penalty unless it unanimously first found the aggravating circumstance under the law. That's how they were instructed, right? That's correct. So, in this case, because the jury made a recommendation by 10 to 2 of the death penalty, that necessarily means that it had to find the aggravating circumstance. And in this case, there was only one aggravating circumstance that was presented to them to find. So, don't we have to conclude that they found that aggravating circumstance? I would submit that you do not. And I think that that argument was rejected in the case of Hearst v. Florida, which applied Ring to a case where this sentence... So, let me say this about that. Assuming that we could apply Hearst, and we can't because it's not retroactive, but assuming it's just sort of an extension, a natural extension of Ring, which it purports to be anyway. In that case, I agree that if you look at the language of the statute for Alabama, and in particular, I am talking about 13A547, Section E. It says, In deciding upon the sentence, the trial court shall determine whether the aggravating circumstances it finds to exist outweigh the mitigating circumstances it finds to exist before it sentence, which means that it actually has to find the circumstances in addition to the jury having to find them. I agree that that seems to be a problem under Hearst. But here's the reason. Here are the two problems that I think your side has. One, that's what Hearst says, and Hearst happens after your client's conviction and is not retroactive. And two, you have to deal with Bohannon, where the state court of Alabama, construing its own statute, says that what makes a person eligible for imposition of the death penalty is the finding by the jury of the aggravating circumstance, which we have here. Right, but I believe that Bohannon is distinguishable on the ground that the aggravating circumstance on which the defendant was sentenced overlapped with the crime with which he was convicted during the guilt phase. So that's different, Bohannon is different than Miller's case in that regard. Are there any, the Supreme Court of the United States reversed and remanded a number of cases post-Hearst to the Alabama courts for application of Hearst. To the extent you know, were any of those cases in the same procedural posture as Mr. Miller's case? In other words, non-overlap cases where a jury was told, you have to determine beyond a reasonable doubt that an aggravating circumstance exists before you recommend a sentence of death, and then the judge made independent findings on the aggravating circumstance. I do not know, Your Honor. I want to piggyback off of Judge Rosenbaum's question, because she mentioned Ex parte Bohannon. I'd like you to focus on ex parte state. There's a bunch of different defendants there, but it's listed in the West Law as ex parte state. There, as I understand it, the Alabama court addressing the same issue did apply it to non-overlap cases. True or not true? I do not recall. So I'll read from ex parte state. This is at page 967 of the opinion. The only question that arises in non-overlap cases is whether it can be determined from the jury's penalty phase advisory verdict alone that the jury unanimously found the existence of an aggravated factor or circumstance necessary to make a defendant eligible for the death penalty. It then goes through the circumstance. It says, in only one circumstance where the jury comes back 0 to 12, do we not know if it made the finding or not? Because there, the way the instructions are done, the jury can only reach the finding and only make the — only weigh the aggravators and mitigators if they find beyond a reasonable doubt unanimously that the aggravator exists. And if it's anything different than 0 to 12, that's 1 to 11, we know that they reached that second step by having gone through the first step. I follow your logic, Your Honor. So now answer Judge Rosenbaum's question, which is, given that Hearst is not retroactive and Alabama seems to interpret its statute in this circumstance as reading the statute such that the jury must make this finding before you get through the gateway of weighing an ultimate determination by the trial judge, whether it violates Ring? I'm sorry. I didn't — I want to make sure I understand your question because I want to answer your question. Okay. Okay. You want to — Judge Rosenbaum, do you want to ask it again or do you want me to — Oh, no. Go ahead. That's fine. So the question is, given that Hearst is not retroactive and given that Alabama seems to read its statute to mean that the jury must find the aggravating circumstance before anybody can do anything, trial judge or jury, doesn't that then comply with Ring, again, ignoring Hearst and ignoring what happened afterwards with Florida's statute? I don't think so because I don't think that there was a finding, and as Judge Rosenbaum pointed out, the statute specifically requires, in two different sections that were in effect at the time, findings by the trial court. But Alabama has read its statute, as I understand it, to be different than Florida's was at the time, and that different being that the jury was required to find. We also have jury instructions which tells the jury specifically, you must find this beyond a reasonable doubt before you can get to the weighing and aggravating circumstance before you get to the weighing. And unlike cases where there's a lot of aggravating circumstances, we know there's only one. So the jury had to have found one to get to the 10-to-2 verdict that it ultimately got to. Right? I understand what you're saying, yes. But I do think in this case, there's a significant procedural issue that I would like to point out that I think addresses the issue of whether or not we can rely on this implicit finding of the ultimate sentence. And that is, on appeal, on his direct appeal, the arguments were raised and the court remanded the case to the district court for findings, fact findings by the trial judge as to whether or not, whether, and related to the heinous atrocious and cruel aggravating factor. So I understand that, and I think that the argument, the point that you raised is a worthwhile one, but I think that, here's my concern, right? Alabama has clearly construed its statute the way we've just been talking about. We as a federal court don't have the authority to say Alabama is wrong in how it construes its statute. Would you agree with that? Yes, unless it violates the Sixth Amendment or a constitution. Okay, but in this case, it does, I mean, are you arguing that it does? I think the sentence violates the Sixth Amendment, yes. Are you arguing that the way that Alabama construes its own statute violates the constitution? We have not made that argument. Okay. So that being the case, we are stuck with Alabama's construction of its own statute. And Alabama has construed its statute to say that the defendant becomes death penalty eligible once the jury unanimously finds an aggravating circumstance. We have that here. And we know what that aggravating circumstance is. And we also know that that is the aggravating circumstance that the court relied upon in imposing the death penalty, whether it came to its own decision or not. We still have a finding, a unanimous finding of fact by the jury that this aggravating circumstance existed. So I'm not seeing where the problem is. I don't know that we, I would submit, Your Honor, that we don't know what the jury found because the jury was never given a special verdict for them. We don't know what they found. They were given a lot of instructions. What else could they have found? I mean, we've already agreed that we assume that the jury follows the jury instructions, right? That is the law in Alabama. Okay. So that being the case, the jury was told, you must unanimously find the aggravating circumstance that is presented to you before you can consider anything else. And then only one aggravating circumstance was presented. And then it said, if you find unanimously that this aggravating circumstance exists, then you must decide whether to recommend a sentence of death. We know that they had to find that if they followed the instructions because they couldn't have gotten to the recommendation of death unless they first unanimously found that the aggravating circumstance applied. And there was only one aggravating circumstance they could have found because that's all that was presented. So I guess I'm missing where there's an issue. Here's what I'd like to say about that, Your Honor, is, as I said, it was remanded. But before it was remanded, this very argument, this very argument of the implicit finding was made in the, was made in the Court of Appeals. And yet the court still remanded it. That wasn't sufficient, apparently, to uphold the sentence of Mr. Miller on direct appeal. So it was remanded after this argument was made, and it came back up, and then it was deferred. So the question I have when I would submit to the court is, what did the court, what did the court on direct review have after it came back than what it had before it went  And I was— Well, let me, I'll tell you, for my part, I think you have a very strong argument if Hurst applied because the procedural setup here is very similar to what happened in Hurst in Florida. In Hurst, the jury was instructed that it could recommend a death sentence only if it found at least one aggravating circumstance beyond a reasonable doubt. They were given two, general verdict recommending death by a 7 to 5 vote, trial court that independently finds both aggravating circumstances. When the case gets to the U.S. Supreme Court, Florida argues there's really no error or any error is harmless because the jury was told that it could only recommend death if it found an aggravator beyond a reasonable doubt. And the U.S. Supreme Court in a separate section of the opinion rejects that argument about an advisory jury verdict. And so here, because of retroactivity principles, we're sort of operating in a parallel universe. So if we were doing—I speak only for myself, not for my colleagues. If we were doing de novo review, I think you'd have a very good argument under Hurst. But we're not. And Hurst is not retroactive, so you're left with Ring. And the precedent that follows Ring suggests what both Judge Rosenbaum and Judge Luck have suggested, which is if a jury makes a finding or implicitly makes a finding that makes a But I think if you look at Ring specifically, this really is a Ring issue. Because in footnote 6 of the opinion, the court specifically calls out the states that had sentencing schemes like Arizona's. And they include Florida, Alabama, Delaware, and Indiana. But what do we do with—and I think Judge Jordan was referring to these cases—our precedent between Ring and Hurst, which explicitly applied Ring to these exact sentencing schemes that you're talking about, and specifically Florida's in this case, or in Evans, and said that there was no Ring violation. What do we do with that? Well, I think that Hurst is just an extension of Ring, and it calls for— The problem is we have precedent which says that it's not retroactive. So there's no way for me—and again, I'll speak only for myself—to be able to apply that here. That decision may be right or wrong. I don't know the answer to that. But that's certainly what our precedent is. And given that, we are in—I'll use the same phrase Judge Jordan used—the alternative universe of we can't look at Hurst, we're in post Ring. And it seems to me as if our precedent has already decided this exact issue with regard to a very similar sentencing scheme. We have not argued that Hurst applies retroactively. And the district court in this case, in Mr. Miller's case, found that retroactivity was not an issue, that Hurst simply informed how Ring applies. And I believe that Ring applies here. Just if you follow the syllogism from Arizona to Florida to Alabama, the Supreme Court of the United States has viewed all of those capital sentencing schemes to be indistinguishable in terms of the aggravating circumstances. What do we do with our precedent that says not the case with regard to Ring? I would submit that Ring applies and it has to be followed. I'm not trying to evade your question. I understand that. But assume with me for the moment that Evans, for example, his precedent, at least with regard to Florida's scheme, which you said is like Alabama's, which says that it applies to Ring and says the Florida scheme does not violate it in all of its forms. Then how are we to then apply it to here and conclude to the contrary? Well, again, without going into that case, I do believe that the fact that this is a non-overlap case is significant, and I don't know whether that case is a non-overlap case. Well, Florida doesn't have overlap or non-overlap. Florida has a different scheme when it comes to that sort of stuff. One possible answer to the question, although it may not be satisfactory, is that Hearst shows that cases like Evans were wrongly decided. And maybe you can argue that that rejection of a case like Evans is something we can't ignore, but then that creates the problem of how do you apply Hearst itself substantively here. You can spend all your time on whatever issue you want, but your time is drawing to a close and I want to make sure if you want to get to any of the other issues at oral argument, you've preserved everything in your brief, of course, but if you want to get to any other thing in oral argument, you do it now so that your colleague on the other side has a chance to respond. I appreciate that. Thank you, Your Honor. If it's okay, unless there were specific questions on the other issues, I wanted to spend the balance of my argument addressing the Ring issue. I believe those are substantively meritorious arguments that we've advanced on Strickland, but I wanted to address the Ring issues at oral argument today. Take all the time you want, sure. Thank you. As I said, I wanted to address the remand issue on the point of what did the court have after remand that it didn't have before. And I would submit that it's at page 1167 of 913 Southern 2nd of the Miller's Direct Appeal in 2004. After remand, it had a factual finding that, quote, there was sufficient time between the initial gunshot wound and the final fatal shots for each of the victims to realize his fate, end quote. And that was relied on, or that was what the court signaled was different. That was the factual finding, this psychological harm to the victims that it didn't have before remand that it had afterward. So I think in this case, regardless of what the jury was instructed, the actual procedural posture of this case establishes that there was additional factual findings to make Mr. Miller eligible for death for heinous, atrocious, and cruel. Heinous, atrocious, and cruel is really just a conclusion based on the facts, but the facts under Ring have to be found by the jury, just as in Mr. Ring's case. Let me just make sure I understand. Are you arguing that when the Alabama Court of Appeals ultimately wound up affirming, it wasn't affirming on the basis that the jury had found the special circumstance. It was affirming on the basis that the judge had found the special circumstance because it was, and it was necessarily doing that because it was alluding to evidence that was not before the jury when the jury made the finding? I do believe, just to be clear, Your Honor, I do believe that in the court of appeals decision, it relies on the implicit nature of the finding. So I don't want to in any way suggest that it did not. What I'm suggesting is that it wanted more fact finding, and these facts under Ring that are required to enhance a capital defendant sentence were in this case, in fact, found by the judge. I think, again, for myself, that you are right to a degree, and an important degree, that under Alabama law, no matter how the Alabama courts have interpreted it after Hearst, you need a judge's own factual findings. If a jury recommends a sentence of death, right, by a 12 to 0 vote, and the judge imposes sentence of death without making any findings, there's going to be a remand under the old Alabama law. It's changed, of course. Correct. Because Alabama law back then, statutorily, required a judge to make parallel findings as well. So I think you're right, but the question is, for us, is whether or not what the jury was asked to do here is enough to comply with and satisfy Ring. I see that my time is up. Thank you very much. You've got your full time for rebuttal. Thank you. Thank you very much, Mr. Nebbe. Ms. Jordan. Good afternoon. May it please the Court, opposing counsel, my name is Audrey Jordan, and I represent the respondents in this case. Just to quickly touch on the four issues that were presented for oral argument in this case, the first of which this Court has already discussed, is that of whether or not Miller's death sentence violates the Sixth Amendment as interpreted by Ring.  Yes, Your Honor. And I want to, sometimes in these cases, it helps me at least to sort of wipe away AEDPA for a second, look at an issue de novo, and then sort of step back and see what the State Courts did was unreasonable or contrary to, or was a reasonable application of existing precedent. What is the difference, thinking de novo now, what is the difference between what happened in the Florida case of Hurst and the Alabama case of Mr. Miller? The State, of course, under our state law, under Bohannon and its progeny, we, the Alabama statute requires that a jury to make that determination first. So did Florida. Florida's jury in Hurst was instructed that before it can find, before you could recommend a death sentence, you must find at least one aggravating circumstance beyond a reasonable doubt. They were given two aggravators. General verdict returned, just like here. Split verdict, 7 to 5 there, 10 to 2 here. And then the judge makes independent factual findings that both aggravators existed. The State of Florida makes an argument. If there was an error, it's harmless, there was really no error, because the jury was told it had to unanimously find an aggravating circumstance before recommending death. And in a separate part of the opinion, the Supreme Court rejects the argument with this language. It is true that in Florida the jury recommends a sentence, but it does not make specific factual findings with regard to the existence of mitigating or aggravating circumstances, and its recommendation is not binding on the trial judge. A Florida trial court has no more the assistance of a jury's findings of fact with respect to sentencing issues than does a trial jury in Arizona, referring to Ring. What's the difference between, again, de novo, what's the difference between the Florida scheme struck down as applied in Hearst and the Alabama scheme as applied in Mr. Miller's case? I believe under Alabama's scheme for sentencing, at least in effect at the time, the court could have based its recommendation, or rather its sentencing, on a perhaps an aggravator that the jury may not have found that was not overlapping, as in this case, as this Court's argument. That the State did not submit and that the jury was not? No, that it was submitted, but it was maybe submitted during the penalty phase rather than being an overlapping aggravator, and there being an overlapping aggravator submitted during the guilt phase. But isn't that a problem, then? I mean, the problem is, well, let me go back to basics here. Under this statute where it says, in deciding upon the sentence, the trial court shall determine whether the aggravating circumstances it finds, right? Correct. To exist. So regardless of what the jury finds, in order for there to be a sentence of death, the judge must also independently find an aggravating circumstance. Isn't that right? Before the judge, but the jury must find that aggravator according to Ring. Okay, but, well, let me put it this way. If the jury finds an aggravator and the judge does not, can the judge impose a sentence of death? Having not found an aggravating circumstance under the old regime? No. Okay, so isn't that a problem, then, right? I mean, why isn't that a problem? Because what it means is that, ultimately, whether the judge can impose a sentence of death depends only on whether the judge himself finds an aggravating circumstance that he's willing to rely on or she's willing to rely on. The response to that may be that the judge may have weighed the mitigating circumstances differently in that case, and based on that weighing of those mitigating circumstances, found that outweighed that aggravating circumstance. But regardless, regardless of whether the judge found that to be the case, the judge cannot impose a sentence of death unless she or he, independent of the jury, also finds that an aggravating circumstance exists, right? We just agreed on that. Otherwise, there couldn't be any override cases in Alabama, and there are plenty of those. Correct. So a jury could come back, even in an overlap case, and, excuse me, a non-overlap case like this one, the jury could come back with a recommendation of life, and the judge could say, I find that this aggravator exists, which makes you death eligible, and I also find that this aggravator outweighs the mitigating circumstances. I'm going to impose a sentence of death, right? Correct. That, on a de novo review, and again, I know we have to then go back and put EIPA on top, which is this case, and I'm not suggesting we're not going to do that, but if a judge can override in those circumstances, isn't there a significant problem under Hearst? Again, I have to fall back to what Your Honor mentioned earlier, that Hearst is just not applicable in this case. Well, I know, but I'm in a different universe right now. Sure. So I'm asking you de novo, without EIPA review. See, I think the Alabama courts have gotten this wrong. Now, it's not for us to say on de novo review, but in my personal opinion, the Alabama courts have this wrong as a Hearst matter. As a Ring matter, different story. But I cannot see a significant difference, any material difference, between what happened with Mr. Hearst's case in Florida and Mr. Miller's case in Alabama. They are exactly the same. Jury told, you have to find an aggravator beyond a reasonable doubt before you recommend a sentence of death. There's a general verdict. Jury recommends a sentence of death without saying what it did. Judge imposes a sentence of death by independently finding aggravators. Florida says, that's enough. Supreme Court says, no, not enough. You can't rely on the jury's advisory verdict. So, I said my piece, but I think that if you're doing de novo review, there's a significant problem with the Alabama scheme as it existed back then in a non-overlap case. Well, under a depo review, it's the state's position that the recommendation, or rather that the jury did actually make that finding as required under Ring. Can we back up a little bit, because something is getting lost, at least to me, and maybe I'm confused by it. So, as I read Bohannon and State, ex parte State and ex parte Bohannon, they distinguish the Alabama and Florida schemes in terms of who has to make the finding for eligibility. Because remember, that's what Ring says. Not what happens later, not what the judge ultimately decides, but for eligibility, even to get to the judge to make that finding, right? Correct. In other words, it's kind of like a door. To get through that door, the death penalty door, you've got to make a finding. Who makes that finding? That's the question. In Florida, as I read Hearst, the Supreme Court looked at the portion of Florida statute which says that finding is made, quote, by the court, right?  Whereas, in Bohannon, I read, and let me know if I'm wrong, I'm reading Bohannon and ex parte State to say, no, in Alabama, the jury and only the jury is the one that makes that aggravated circumstance finding to open the door. And then once the door is open, the trial judge then gets to see if he agrees or disagrees or she disagrees, and whether he or she would impose the death penalty or not, or override or not. Am I reading that right? Yes, Your Honor. That seems to be a pretty big distinction, both between Hearst and the way Alabama is reading its statute, and between the Florida scheme and the Alabama scheme. Yes, Your Honor. Okay. If that's the case, and Judge Luck, I think, is right, but if that's the case, there could not have been any judicial overrides constitutionally during this period of time, right? Well, the statutory language did provide for judicial override at that time, yes. But constitutionally, it could not have happened. If the jury is the one, as Bohannon and State say, that has to make the eligibility determination, and a jury comes back 12 to 0 back then, recommending life, the judge cannot override, right? Based on their statutory authority. Cannot override. The judge... Constitutionally, cannot override, based on how Bohannon and State have read the statutory scheme. Correct. And yet, the Alabama Supreme Court was affirming overrides, over a dozen of them, during this time period. Right? They were affirming cases with judicial override, yes. Which suggests that maybe the Alabama scheme wasn't operating in the way that Bohannon and State now describe them at the relevant time. Ergo the problem on de novo review. Thankfully, under a depo review, we are simply considering whether or not our statute, or what was done in this case, actually complied with Ream. And whether or not the jury followed the instructions of the court, which we know that they did. Because, in fact, the trial court actually specifically asked the jury, when they were returning its verdict during the penalty phase in this case, whether or not it had followed the court's instructions and its formula in making its determination in this case. Which, of course, we know, first of all, was to make a determination about that aggravating circumstance and whether or not the facts supported making that finding. And the jury did affirm that they did, in fact, follow that formula when it was making its determination. So it's the State's position that there wasn't a Ream violation in this case. I want to go back to the point that Judge Jordan was asking about. So as I understand it, there are very few, very, very few non-overlap cases. I'm sorry, there are very few what? Non-overlap cases. There are a few, yes. And that's because Alabama statute essentially tracked capital cases with aggravating factors almost word for word. Yes. Right. This is actually one of the few. In fact, six months after this case, this very capital offense became an aggravating factor. Correct. Right. So there, unlike Florida and other states, there are very few where the jury did not actually make a 12-0 finding at the guilt phase of what the aggravating circumstance would be, right? I'm sorry. Can you? There are very few cases where the jury would not have made a unanimous finding of the aggravated factor at the guilt phase, because to qualify as a capital felony, it had to meet that very same aggravating factor, right? I apologize, I'm not really sure I follow your question. Sure. To qualify as a capital felony, it's mirror image for what qualifies as an eligible aggravating factor. Correct. Which is what I understand almost all is in Alabama. This is one of the few cases that are not. Then we will always, if the jury finds guilt, have a 12-0 eligibility finding in Alabama, except for the few non-overlap cases that exist out there, right? Yes. Right. So where a judge comes back, even though the jury recommended not to impose the death penalty and the judge overrides that for whatever reason, there still would have been an eligibility finding in all of those overlap cases, right? Correct. Right. It's only in the very few, like Miller, non-overlap cases where this would possibly be the case. And even here, of course, we don't have an 0-12 recommendation, right? Correct. We had 10-2. Correct. That's correct. I just want to touch briefly, too, on the remand order by the Court of Criminal Appeals. I know that was mentioned earlier as a concern under Ring as well, but in that remand order at the time, and even now with regard to instances where an aggravating circumstance is considered especially heinous, atrocious, or cruel, the trial court is required in its sentencing order to actually provide facts that support that finding so that it is available or so that the appellate courts can review that finding. So that doesn't necessarily take away the jury's finding, that doorway finding, if you will, that aggravating circumstance actually applied in that case, and it didn't put exclusive power to the trial court for fact-finding purposes. That determination had already been made when that remand order was sent out to the trial court, and to read it as otherwise would essentially allow the trial court to re-sentence a defendant, which was not the intent and purpose behind that remand order in this case. But let me ask you something, though. I mean, if the jury finding in and of itself was enough to sentence the defendant to death, why would you need to have the — why would you need to remand the matter to the judge to list — to have a hearing, not even just list reasons, but have an evidentiary hearing, and then list his own reasons for why he also and independently found that aggravating circumstance? Well, for this particular aggravator, they're — under state law, we're required to actually provide facts that would support the finding of that aggravator. A court is not — cannot just do a vague finding that there was — that this crime, in comparison to other capital offenses, was especially heinous, atrocious, or cruel. It has to provide supporting facts for that. Can I flip things around for you and see if I can figure this thing out a little bit better? Was the trial judge in Mr. Miller's case permitted, after the jury came back with its 10 to 2 recommendation, based on a single aggravating circumstance that it found beyond a reasonable doubt, have rejected the jury's factual finding and ruled that under the facts and circumstances presented, this — these murders were not especially heinous, atrocious, or cruel? Based on the statute — At the time. At the time. He could have, right? I believe so, yes. That's why at the time — again, this doesn't go to whether Mr. Miller's claim succeeds or not, but at the time, the jury's overall recommendation — not the eligibility finding, but the overall recommendation — was advisory only, right? Well, the statute — language in the statute does note that their recommendation was an advisory one, yes. Right. So the judge can not only, in these few non-overlap cases, as Judge Luck described, override, but could also reject the death recommendation, too, by saying, I don't think that aggravator exists in this case. Correct. Right? And then the Court of Appeals would review the trial judge's decision on the aggravator to see whether or not it survived appellate review, right? Correct. But at the — but you still, at the very beginning, before you get there, have the jury make a determination about the aggravator itself. Right. Understood. Understood. But the judge has to make — as the scheme existed in Alabama at the time, to validly pose a death sentence, the judge had to make his or her own independent findings about the statutory aggravator or aggravators that made the defendant death eligible, right? Correct. Yeah. I think I understand it now. That's just going to lead me into the second issue that was presented for OA, which is the issue of whether or not Miller's case violates the Eighth Amendment in context of Caldwell v. Mississippi. Well, Ms. Jordan? Yes, Your Honor. Mr. Neppe didn't raise that issue at argument. You're certainly free to address it, but if you do, I'm going to give him the chance to respond in his rebuttal. So whatever you'd like to do is fine with us. With that, the State would rest. Thank you very much. Mr. Neppe? I'd just like to address one point that counsel made in response, and that is the State said that for heinous, atrocious, and cruel, specific additional factual underpinnings are required for that aggravating circumstance to make the defendant eligible for the death penalty. And I agree. And those are factual findings that a jury hasn't made. Correct. That's the whole point. And that is the Ring violation. And even under EDPAS 2254 D1, Mr. Miller is entitled to relief under Ring. The question then becomes whether or not, as you argue, the Ring line of cases, starting with Apprendi, require more than just a death eligibility finding, but findings necessary to decide to impose a death penalty as a matter of discretion. And in your view, they do.  And that's, I think, how we satisfy 2254 D1. And so if you, you know, if you're limited to dealing in a pre-Hearst universe, what would you cite that supports that? Supports the fact that the fact is required to be found by a jury? That supports the argument that you have just made, which is that it's not enough that a jury finds the mitigating, not the mitigating, the aggravating circumstance. The jury has to find the particular factual findings that support the aggravating circumstance, even though the aggravating circumstance is the same as the jury found. You know what I'm saying? That ultimately support the imposition of the death penalty by the trial judge. Yes. And in this case, I think it's, I don't want to say it's unique only to this aggravator because, but I do think it's significant for this aggravator because heinous, atrocious, and cruel has its own issues as opposed to a robbery or a kidnapping or whatever, which are easily ascertainable facts. I would cite Ring. And I would cite Ring at page 589 of the opinion, right before section one. Quote, capital defendants, no less than non-capital defendants, we conclude, are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment, end quote. And in the Ring case itself, the sentencing judge found as the heinous, atrocious, and cruel aggravating fact that the defendant in that case was impressed with his marksmanship. That was the fact that supported the heinous, atrocious, and cruel finding. So, I would submit that that is indistinguishable for present purposes, and that is why there's a Ring violation. What role did the jury play in that determination in Ring? None. Right. So, there's a little bit of a difference here, right? But I would say- Maybe a big difference. But we don't know what the jury found because it was this general, it's a one-liner, ten to two, is what it was. Well, we know that they found it was especially heinous and atrocious, or whatever the language is. Because that's the only aggravating circumstance that was offered to them, and because we've already agreed that we presume that the jury follows the instructions. So, I think we can all agree to that. The question is whether it matters for purposes of the Ring analysis, whether the jury found that circumstance, or whether it found the facts underlying that circumstance that the trial judge ultimately relied on. And you're arguing the latter. Correct. Okay. Correct. That's what we are arguing. If there are no other questions, I appreciate your time. Thank you very much. Thank you. We want to thank both of you for your argument, it was very, very helpful, and we really do appreciate it. Mr. Nepi, I presume that your firm was handling this case pro bono. It is, Your Honor. And we want to thank you and the firm for doing that. It's a great service to us and to the public at large, and please tell everybody there, we really do appreciate it. And Ms. Jordan, thank you very much for your argument as well. We're in recess. All rise.